✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED
2:23 pm, Oct 01 2025
AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___M.G.___ Deputy

WDM/DMW: USAO2025R00129

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * CRIMINAL NO. 8:25-mj-02201-GLS |
| | * |
| SANTOS REYES-CRUZ, | * UNDER SEAL |
| Defendant | * |
| | * |
| | * |

*******

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Alex R. Tortolano, Special Agent (SA), Homeland Security Investigations (HSI), being duly sworn, depose and state as follows:

1. This Affidavit is submitted in support of a criminal complaint and arrest warrant for **SANTOS REYES-CRUZ**, charging him with unlawful Distribution of a Controlled Substance, in violation of 21 U.S.C. § 841, Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. § 846, Possession of a Firearm in Furtherance of a Drug Trafficking Crime and Use and Carry a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924 (c), and Alien in Possession of a Firearm, in violation of 18 U.S.C. § 922 (g)(5).

2. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. §2510(7), that is, an officer of the United States empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. §2516.

3. I have been a sworn member of HSI since September 2022. I am currently assigned to the Special Agent in Charge (SAC) Baltimore Office, Homeland Security Task Force (HSTF) Group III, which investigates violations of federal firearm laws, violent crimes, and narcotics trafficking committed by foreign nationals.

1

4. As an HSI investigator, I have conducted and participated in numerous investigations concerning violations of federal firearm laws, violations of federal controlled substance laws, and the commission of violent crimes. I have received specialized training regarding, and have personally participated in, various types of investigative activities, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing of witnesses, informants, and other individuals who have knowledge concerning violations of federal firearms and controlled substance laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance through the use of pen registers and trap and trace device; (g) the handling, maintenance, and examination of evidence to include electronic devices.

5. I have been involved in the investigation of Organized Crime Drug Enforcement Task Force (OCDETF) investigations involving firearms and drug trafficking organizations. I have attended training courses related to undercover firearms and narcotics investigations, drug interdiction, conducting interviews, drug recognition, fraud, and money laundering. Through my training and experience, I have gained extensive experience in debriefing defendants, working with confidential informants, and collecting information from various persons with direct experience with the methods used to traffic firearms and distribute controlled substances.

6. Through my training and experience in firearms and narcotics trafficking investigations and arrests, I am familiar with the actions, traits, habits, and terminology utilized by firearms and narcotics traffickers. I am familiar with the ways in which firearms and narcotics traffickers conduct their business, including methods of importing and distributing firearms narcotics, money laundering, the use of cellular telephones and the internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct firearms and narcotics transactions.

7. Because I have submitted this Affidavit for the limited purpose of establishing probable cause, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause.

## PROBABLE CAUSE

8. During this investigation, investigators have identified **REYES-CRUZ** and six co-conspirators (hereinafter **co-conspirator #1, co-conspirator #2 co-conspirator #3, co-conspirator #4, co-conspirator #5, and co-conspirator #6**) as individuals who were involved in the trafficking of firearms and the distribution of fentanyl and cocaine in and around the area of Prince George's County, Maryland, Baltimore County, Maryland and the Eastern District of Virginia.

9. In January 2025, the Prince George's County Police Department (PGPD) Narcotics Enforcement Division – Gang Unit began investigating **REYES-CRUZ** after receiving information from a confidential informant ("CI-1"). CI-1[1] advised that **REYES-CRUZ** is a member of the Transnational Criminal Organization (TCO) La Mara Salvatrucha ("MS-13"). CI-1 further advised that **REYES-CRUZ** is trafficking firearms and distributing large quantities of narcotics, specifically cocaine, in and around Prince George's County, Maryland. PGPD detectives contacted HSI special agents to assist with the investigation.

10. HSI SAs conducted systems searches in multiple enforcement databases available to them and discovered that **REYES-CRUZ** is a Honduran citizen and national, and not a native,

---

[1] CI-1 is a registered PGPD confidential informant and HSI Source of Information. CI-1 is receiving immigration benefits as well as financial compensation for his/her services. CI-1 has provided information that has been corroborated and proven to be truthful.

3

citizen, or national of the United States. On August 1, 2016, the United States Border Patrol (USBP) arrested **REYES-CRUZ** near Hidalgo, Texas after determining that he entered the United States illegally without inspection, admission, or parole by an Immigration Officer. Because **REYES-CRUZ** entered the United States as a juvenile, he was released from detention to the custody of his father, Santos Roman Reyes Cruz. **REYES-CRUZ** does not have any immigration documents to enter or remain in the United States. A search in the Executive Office for Immigration Review (EOIR) Automated Case Information system revealed **REYES-CRUZ**'s immigration removal proceedings are still pending.

11. On February 6, 2025, at approximately 8:30 p.m., HSI SAs and PGPD officers utilized CI-1 to conduct a controlled purchase of narcotics from **REYES-CRUZ** near 9500 Allentown Road, Fort Washington, Prince George's County, Maryland (hereinafter TARGET LOCATION #1). During the controlled purchase, CI-1 called **REYES-CRUZ** on telephone number (240) 210-5534 (hereinafter SUBJECT TELEPHONE #1) to arrange the purchase of the narcotics. **REYES-CRUZ** instructed CI-1 to meet him in the McDonald's parking lot on Livingston Road in Fort Washington, Prince George's County, Maryland ("McDonald's") so **REYES-CRUZ** could get into CI-1's vehicle and drive to TARGET LOCATION #1 where the narcotics would be delivered. Investigators conducted a complete search of CI-1's person and vehicle. The search revealed CI-1 was not in possession of any narcotics, firearms, or money. Investigators provided CI-1 with $1,750.00 USD for the purpose of purchasing the narcotics. Investigators followed CI-1 from the briefing location to the McDonald's parking lot, without stopping or meeting with any other person, and without leaving the sight of investigators. Once at the McDonald's parking lot, investigators observed **REYES-CRUZ** get into CI-1's vehicle. A short time later, both CI-1 and **REYES-CRUZ** proceeded to drive, in CI-1's vehicle, towards

TARGET LOCATION #1. During the drive, **REYES-CRUZ** made a phone call to an unknown Hispanic Male with an unknown telephone number to coordinate the drop of the narcotics. After CI-1 and **REYES-CRUZ** arrived at TARGET LOCATION #1, investigators observed two unknown Hispanic males, **co-conspirator #1** and **co-conspirator #2**, approach CI-1's vehicle on foot to drop off the narcotics. Once the transaction was complete, CI-1 and **REYES-CRUZ** drove back to the original meeting location at McDonald's. **REYES-CRUZ** exited CI-1's vehicle and left the area. Investigators followed CI-1 back to the briefing location, without stopping or meeting with any other persons, and without leaving the sight of investigators. At the briefing location, CI-1 relinquished the purchased narcotics consisting of 242 fentanyl pills. The fentanyl was seized by HSI SAs and turned over to PGPD for storage and testing.

12. The PGPD Forensic Sciences Division – Drug Analysis Laboratory tested a sample from the suspected fentanyl pills and concluded that the sample was fentanyl, a Schedule II controlled substance.

13. On March 12, 2025, at approximately 8:00 p.m., HSI SAs, ATF SAs, and PGPD officers utilized CI-1 to conduct a controlled purchase of narcotics from **REYES-CRUZ** near TARGET LOCATION #1. During the controlled purchase, CI-1 called **REYES-CRUZ** on telephone number (240) 923-1192 (hereinafter SUBJECT TELEPHONE #2) to arrange the purchase of the narcotics. **REYES-CRUZ** instructed CI-1 to meet him in the parking lot of McDonald's so **REYES-CRUZ** could get into CI-1's vehicle and drive to TARGET LOCATION #1 where the narcotics would be delivered. Investigators conducted a complete search of CI-1's person and vehicle. The search revealed CI-1 was not in possession of any narcotics, firearms, or money. Investigators provided CI-1 with $2,250.00 USD for the purpose of purchasing the narcotics. Investigators followed CI-1 from the briefing location to the McDonald's parking lot,

without stopping or meeting with any other person, and without leaving the sight of investigators. Once at the McDonald's parking lot, investigators observed a white Honda Accord bearing Maryland license plate 8EH7283 park near CI-1's vehicle. **REYES-CRUZ** exited the Honda and got into CI-1's vehicle. A short time later, both CI-1 and **REYES-CRUZ** proceeded to drive towards TARGET LOCATION #1. During the drive, **REYES-CRUZ** made a phone call to an unknown Hispanic male with an unknown telephone number to coordinate the drop of the narcotics. After CI-1 and **REYES-CRUZ** arrived at TARGET LOCATION #1, investigators observed **REYES-CRUZ** exit CI-1's vehicle and walk to the parking lot of 9502 Allentown Road, Fort Washington, Prince George's County, Maryland where he approached a red Honda CR-V bearing Maryland license plate 8GL5498 being driven by **co-conspirator #3**. **REYES-CRUZ** spoke with **co-conspirator #3** for a few minutes and then walked back to CI-1's vehicle. Once the transaction was complete, CI-1 and **REYES-CRUZ** drove back to the McDonald's. **REYES-CRUZ** exited CI-1's vehicle and left the area. Investigators followed CI-1 back to the briefing location, without stopping or meeting with any other persons, and without leaving the sight of investigators. At the briefing location, CI-1 relinquished the purchased narcotics consisting of 250 fentanyl pills and five grams of cocaine, with packaging. CI-1 told investigators **REYES-CRUZ** was in possession of the cocaine and handed it to CI-1 when **REYES-CRUZ** got in CI-1's vehicle. The fentanyl was obtained by **REYES-CRUZ** from **co-conspirator #3** and then sold to CI-1. The fentanyl and cocaine were seized by HSI SAs and turned over to PGPD for storage and testing. This controlled purchase was audio recorded utilizing covert recording equipment.

14. The PGPD Forensic Sciences Division – Drug Analysis Laboratory tested a sample from the suspected fentanyl pills and concluded that the sample was heroin and fentanyl. Heroin

is a Schedule I controlled substance. The lab also tested the suspected cocaine and concluded that the substance was cocaine hydrochloride, a Schedule II controlled substance.

15. On April 9, 2025, at approximately 8:55 p.m., HSI SAs, ATF SAs, and PGPD officers utilized CI-1 to conduct a controlled purchase of narcotics from **REYES-CRUZ** near TARGET LOCATION #1. During the controlled purchase, CI-1 called **REYES-CRUZ** on SUBJECT TELEPHONE #2 to arrange the purchase of the narcotics. **REYES-CRUZ** instructed CI-1 to meet him in the parking lot of TARGET LOCATION #1. Investigators conducted a complete search of CI-1's person and vehicle. The search revealed CI-1 was not in possession of any narcotics, firearms, or money. Investigators provided CI-1 with $5,100.00 USD for the purpose of purchasing the narcotics. Investigators followed CI-1 from the briefing location to TARGET LOCATION #1, without stopping or meeting with any other person, and without leaving the sight of investigators. Once at TARGET LOCATION #1, investigators observed CI-1 park, exit their vehicle, and get into a black Mitsubishi Lancer bearing Virginia license plate TCX8389. Investigators observed **REYES-CRUZ** exit the Mitsubishi Lancer and walk over to and enter the red Honda CR-V operated by **co-conspirator #3**. Investigators then observed **co-conspirator #4** exit a black Dodge Durango bearing Virginia temporary license plate 42799Y and get into the red Honda CR-V. **REYES-CRUZ** exited the Honda and got into the Mitsubishi Lancer. A short time later, CI-1 exited the Mitsubishi Lancer and got into their vehicle. CI-1 departed TARGET LOCATION #1 while investigators followed CI-1 back to the briefing location, without stopping or meeting with any other persons, and without leaving the sight of investigators. At the briefing location, CI-1 relinquished the purchased narcotics consisting of 516 fentanyl pills and 21.1 grams of cocaine, with packaging. CI-1 told investigators **REYES-CRUZ** was in possession of the cocaine and handed it to CI-1 when they got into **REYES-CRUZ**'s vehicle. The fentanyl was

obtained by **REYES-CRUZ** from the Honda CR-V after meeting with **co-conspirator #3** and **co-conspirator #4** and then sold to CI-1. CI-1 also stated there was an unidentified Hispanic male, **co-conspirator #5**, in the back seat of the Mitsubishi Lancer during the controlled purchase. The fentanyl and cocaine were seized by HSI SAs and turned over to PGPD for storage and testing. This controlled purchase was audio recorded utilizing covert recording equipment and video recorded by PGPD air operations.

16. The PGPD Forensic Sciences Division – Drug Analysis Laboratory tested a sample from the suspected fentanyl pills and concluded that the sample was heroin and fentanyl. The lab also tested the suspected cocaine and concluded that the substance was cocaine hydrochloride.

17. On May 1, 2025, at approximately 1:00 p.m., HSI SAs, ATF SAs, and PGPD officers utilized an HSI Confidential Informant ("CI-2") to conduct a controlled purchase of firearms from **REYES-CRUZ** near 6715 Stoneybrook Lane, Alexandria, Virginia 22306 (hereinafter "TARGET LOCATION #2"). During the controlled purchase, CI-2[2] called **REYES-CRUZ** on telephone number (571) 275-9256 (hereinafter "SUBJECT TELEPHONE #3") to arrange the purchase of the firearms. **REYES-CRUZ** instructed CI-2 to meet him at TARGET LOCATION #2. Investigators conducted a complete search of CI-2's person and vehicle. The search revealed CI-2 was not in possession of any narcotics, firearms, or money. Investigators provided CI-2 with $3,400.00 USD for the purpose of purchasing the firearms. Investigators followed CI-2 from the briefing location to TARGET LOCATION #2, without stopping or meeting with any other person, and without leaving the sight of investigators. Once at TARGET LOCATION #2, investigators observed CI-2 park next to a black Mitsubishi Lancer bearing

---

[2] CI-2 is a registered HSI confidential informant and has been working with HSI since 2012. CI-2 is receiving immigration benefits as well as financial compensation for his/her services. CI-2 has provided information that has been corroborated and proven to be truthful.

Virginia license plate TCX8389. Investigators observed **REYES-CRUZ** exit the Mitsubishi Lancer and enter CI-2's vehicle. After a short time, **REYES-CRUZ** exited CI-2's vehicle, got back into the Mitsubishi Lancer and then departed the area. CI-2 then advised investigators **REYES-CRUZ** was going back to his residence, located at 3805 Elmwood Drive, Alexandria, Virginia 22303, to retrieve some narcotics to sell to CI-2. After a short time, **REYES-CRUZ** returned to TARGET LOCATION #2, exited his vehicle, and got into CI-2's vehicle. After a short time, **REYES-CRUZ** exited CI-2's vehicle, got back into his vehicle, and departed TARGET LOCATION #2. CI-2 departed TARGET LOCATION #2 while investigators followed CI-2 back to the briefing location, without stopping or meeting with any other persons, and without leaving the sight of investigators. At the briefing location, CI-2 relinquished the purchased firearms, consisting of one Glock 23 pistol with the serial number obliterated, later located on another gun part; MVM135, and one privately made firearm with no serial number. CI-2 also relinquished the purchased narcotics, consisting of 26 grams of cocaine, including packaging, and 56 grams of suspected marijuana. CI-2 told investigators that **REYES-CRUZ** sold them the firearms for $2,400.00 USD and the narcotics for $1,000.00 USD. The firearms were seized by HSI SAs and turned over to ATF SAs for storage and testing. The narcotics were seized by HSI SAs and turned over to PGPD for storage and testing. This controlled purchase was audio recorded utilizing covert recording equipment.

18. The PGPD Forensic Sciences Division – Drug Analysis Laboratory tested a sample from the suspected cocaine and concluded that the sample was cocaine hydrochloride.

19. The ATF conducted an interstate nexus examination and concluded the seized firearms traveled through interstate or foreign commerce prior to their possession by **REYES-CRUZ**.

20. On May 15, 2025, at approximately 8:00 p.m., HSI SAs, ATF SAs, and PGPD officers utilized CI-1 to conduct a controlled purchase of narcotics from **REYES-CRUZ** near TARGET LOCATION #1. During the controlled purchase, CI-1 called **REYES-CRUZ** on SUBJECT TELEPHONE #3 to arrange the purchase of the narcotics. **REYES-CRUZ** instructed CI-1 to meet him in the parking lot of TARGET LOCATION #1. Investigators conducted a complete search of CI-1's person and vehicle. The search revealed CI-1 was not in possession of any narcotics, firearms, or money. Investigators provided CI-1 with $5,500.00 USD for the purpose of purchasing the narcotics. Investigators followed CI-1 from the briefing location to TARGET LOCATION #1, without stopping or meeting with any other person, and without leaving the sight of investigators. Once at TARGET LOCATION #1, investigators observed CI-1 park, exit their vehicle, and get into a black Mitsubishi Lancer bearing Virginia license plate TCX8389. A short time later, CI-1 exited the Mitsubishi Lancer and got back into their own vehicle. CI-1 departed TARGET LOCATION #1 while investigators followed CI-1 back to the briefing location, without stopping or meeting with any other persons, and without leaving the sight of investigators. At the briefing location, CI-1 relinquished the purchased narcotics consisting of 981 fentanyl pills. CI-1 told investigators **REYES-CRUZ** was in possession of the fentanyl and handed it to CI-1 when they got into **REYES-CRUZ**'s vehicle. The fentanyl was seized by HSI SAs and turned over to PGPD for storage and testing. This controlled purchase was audio recorded utilizing covert recording equipment and video recorded by PGPD air operations.

21. The PGPD Forensic Sciences Division – Drug Analysis Laboratory tested a sample from the suspected fentanyl pills and concluded that the sample was fentanyl.

22. On June 13, 2025, at approximately 6:45 p.m., HSI SAs, ATF SAs, PGPD officers, and BCPD officers utilized CI-2 to conduct a controlled purchase of firearms and narcotics from

**REYES-CRUZ** near 3601 Washington Boulevard, Halethorpe, Baltimore County, Maryland (hereinafter "TARGET LOCATION #3") During the controlled purchase, CI-2 called **REYES-CRUZ** on SUBJECT TELEPHONE #3 to arrange the purchase of the firearms and narcotics. CI-2 instructed **REYES-CRUZ** to meet them at TARGET LOCATION #3 in the back parking lot. Investigators conducted a complete search of CI-2's person and vehicle. The search revealed CI-2 was not in possession of any narcotics, firearms, or money. Investigators provided CI-2 with $9,200.00 USD for the purpose of purchasing the narcotics and firearms. Investigators followed CI-2 from the briefing location to TARGET LOCATION #3, without stopping or meeting with any other person, and without leaving the sight of investigators. Once at TARGET LOCATION #3, investigators observed CI-2 park and wait inside their vehicle. Investigators observed a black Mitsubishi Lancer bearing Virginia license plate TCX8389 enter the shopping center parking lot and drive toward CI-2's vehicle. Investigators observed **REYES-CRUZ** driving the Mitsubishi Lancer and an unidentified Hispanic male, **co-conspirator #6**, riding in the passenger seat. **REYES-CRUZ** exited the Mitsubishi Lancer, retrieved a bag from his trunk, and got into the back seat of CI-2's vehicle. After a short time, **REYES-CRUZ** exited CI-2's vehicle, got back into the Mitsubishi Lancer and then departed the area with **co-conspirator #6** still in the passenger seat. CI-2 departed TARGET LOCATION #3 while investigators followed CI-2 back to the briefing location, without stopping or meeting with any other persons, and without leaving the sight of investigators. At the briefing location, CI-2 relinquished a bag containing the purchased firearms, consisting of one Aero Precision X15 AR pistol bearing serial number X385599, one ROMARM/CUGIR Micro Draco AR Pistol bearing serial number ROA 22 PMD-36280, one Ruger SER9 pistol bearing serial number 335-03503 (previously reported stolen), and one Glock 19 pistol bearing serial number AGNC918. CI-2 also relinquished the purchased narcotics,

consisting of 101 fentanyl pills. The firearms were seized by HSI SAs and turned over to ATF SAs for storage and testing. The narcotics were seized by HSI SAs and turned over to BCPD for storage and testing. This controlled purchase was audio recorded utilizing covert recording equipment. Prior to **REYES-CRUZ** arriving at TARGET LOCATION #3, PGPD officers captured **REYES-CRUZ** on video departing his residence at 3122 Clayborne Avenue, Alexandria, Virginia with the same bag containing the firearms he handed to CI-2 during the controlled purchase.

23. The BCPD Drug Analysis Laboratory tested a sample from the suspected fentanyl pills and concluded that the sample was fentanyl.

24. The ATF conducted an interstate nexus examination and concluded the seized firearms traveled through interstate or foreign commerce prior to their possession by **REYES-CRUZ** in Maryland.

25. On August 5, 2025, at approximately 8:00 p.m., HSI special agents, ATF special agents, and PGPD officers utilized CI-1 to conduct a controlled purchase of firearms from **REYES-CRUZ** near 7320 Webster Lane, Fort Washington, Prince George's County, Maryland (hereinafter TARGET LOCATION #4). During the controlled purchase, CI-1 called **REYES-CRUZ** on SUBJECT TELEPHONE #4 to arrange the purchase of the firearms. **REYES-CRUZ** instructed CI-1 to meet him at TARGET LOCATION #4. Investigators conducted a complete search of CI-1's person and vehicle. The search revealed CI-1 was not in possession of any narcotics, firearms, or money. Investigators provided CI-1 with $7,400.00 USD for the purpose of purchasing the firearms. Investigators followed CI-1 from the briefing location to TARGET LOCATION #4, without stopping or meeting with any other person, and without leaving the sight of investigators. Once at TARGET LOCATION #4, investigators observed CI-1 park and wait inside their vehicle. Investigators set up stationary surveillance at 7519 Allentown Road, Fort

Washington, Prince George's County, Maryland, which was believed to be **REYES CRUZ**'s new residence based on information learned during the investigation including data from court authorized electronic tracking. Investigators observed **REYES-CRUZ** and **co-conspirator #6** depart from the residence in a black Volkswagen sedan bearing Virginia license plate TBC 2977. Investigators followed **REYES-CRUZ** and **co-conspirator #6** to TARGET LOCATION #4. Investigators observed **REYES-CRUZ** park next to CI-1's vehicle, exit the Volkswagen, and get into CI-1's vehicle. After a short time, **REYES-CRUZ** exited CI-1's vehicle, retrieved a bag from the trunk of the Volkswagen, and then got back into CI-1's vehicle. After a short time, **REYES-CRUZ** once again exited CI-1's vehicle and got back into his Volkswagen. CI-1 departed TARGET LOCATION #4 while investigators followed CI-1 back to the briefing location, without stopping or meeting with any other persons, and without leaving the sight of investigators. At the briefing location, CI-1 relinquished the bag containing the purchased firearms, consisting of one Sig Sauer M18 pistol bearing serial number M18A197189 (previously reported stolen), one privately made pistol bearing no serial number, one Taurus G2C pistol bearing serial number ABJ 889944, one Glock 19 pistol bearing serial number BTXS010 (previously reported lost), and one ABC-15 AR Pistol bearing serial number 77-8377. The firearms were seized by HSI SAs and turned over to ATF SAs for storage and testing. This controlled purchase was audio and video recorded utilizing covert recording equipment.

26.    The ATF conducted an interstate nexus examination and concluded the seized firearms traveled through interstate or foreign commerce prior to their possession by **REYES-CRUZ** in Maryland.

27.    On September 11, 2025, at approximately 8:00 p.m., HSI SAs and PGPD officers utilized CI-1 to conduct a controlled purchase of firearms from **REYES-CRUZ** near the

intersection of White Avenue and Thrift Street, Clinton, Prince George's County, Maryland (hereinafter TARGET LOCATION #5). During the controlled purchase, CI-1 called **REYES-CRUZ** on SUBJECT TELEPHONE #3 to arrange the purchase of the firearms. **REYES-CRUZ** instructed CI-1 to meet him at 10199 Wigan Drive, Clinton, Maryland. Investigators conducted a complete search of CI-1's person and vehicle. The search revealed that CI-1 was not in possession of any narcotics, firearms, or money. Investigators provided CI-1 with $4,200.00 USD for the purpose of purchasing the firearms. Investigators followed CI-1 from the briefing location to the area of 10199 Wigan Drive, without stopping or meeting with any other person, and without leaving the sight of investigators. Once at 10199 Wigan Drive, investigators observed CI-1 park and wait inside their vehicle. CI-1 then called **REYES-CRUZ** to let him know they were in the area. **REYES-CRUZ** instructed CI-1 to then drive to TARGET LOCATION #5. Investigators observed **REYES-CRUZ** and **co-conspirator #6** arrive at TARGET LOCATION #5 in a black Volkswagen sedan bearing Virginia license plate TBC 2977. Investigators observed **REYES-CRUZ** park next to CI-1's vehicle, exit the Volkswagen, and get into CI-1's vehicle. After a short time, **REYES-CRUZ** exited CI-1's vehicle and got back into his Volkswagen. CI-1 departed TARGET LOCATION #5 while investigators followed CI-1 back to the briefing location, without stopping or meeting with any other persons, and without leaving the sight of investigators. At the briefing location, CI-1 relinquished the purchased firearms, consisting of one Smith and Wesson M&P Shield pistol bearing serial number JNZ24622 (previously reported stolen), one Smith and Wesson M&P Shield pistol bearing serial number JCR2501, one Taurus G2C pistol bearing serial number ACM658912, and one Smith and Wesson SD9 pistol bearing serial number EFF4386. The firearms were seized by HSI SAs and turned over to ATF SAs for storage and testing. This controlled purchase was audio recorded utilizing covert recording equipment.

28.   The ATF conducted an interstate nexus examination and concluded the seized firearms traveled through interstate or foreign commerce before being possessed by **REYES-CRUZ** in Maryland.

29.   According to reports from The PGPD Forensic Sciences Division – Drug Analysis Laboratory and the BCPD Drug Analysis Laboratory, the total weight of the fentanyl that was recovered to date from each of the controlled buys as described above exceeds 40 grams but is less than 400 grams.

## CONCLUSION

30.   Based on the foregoing, I respectfully submit that this affidavit contains probable cause for the issuance of an arrest warrant charging **REYES-CRUZ** with unlawful Distribution of a Controlled Substance in violation of 21 U.S.C. § 841, Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. § 846, Possession of a Firearm in Furtherance of Drug Trafficking Crime, and Use and Carry a Firearm During and in Relation to a Drug Trafficking Crime in violation of 18 U.S.C. § 924 (c), and Alien in Possession of a Firearm in violation of 18 U.S.C. § 922 (g)(5),

ALEX R TORTOLANO
Digitally signed by ALEX R TORTOLANO
Date: 2025.09.23 09:30:50 -04'00'

Special Agent Alex R. Tortolano
Homeland Security Investigations

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this __24th__ day of September, 2025.

Honorable Gina L. Simms
United States Magistrate Judge